**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JAMES EDWIN CURTIS** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 3:12CV260LRA**

**HINDS COUNTY, MISSISSIPPI,**
**and RICHARD BROWN, in his**
**individual and official capacities** **DEFENDANTS**

---

# MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Defendant Richard Brown's Motion for Summary Judgment Premised on Immunity, by which he seeks dismissal of the claims against him in his individual capacity. The Plaintiff, James Edwin Curtis, claims that Sgt. Richard Brown, a Hinds County Deputy, violated his constitutional rights by unreasonably and recklessly causing him injury during an arrest. Curtis also complains that Brown failed to provide him with proper medical care for his injury, thereby causing him to suffer permanent wrist damage. Finally, Curtis claims that Brown's conduct toward him intentionally inflicted emotional distress.

## FACTS

The following facts are undisputed: Curtis cut his right forearm on some glass on or about May 9, 2011. On May 13, he was arrested by Sgt. Brown at the Petro Shopping Center. Sgt. Brown, who was providing security for Petro, had observed Curtis walking in a part of the parking lot that was reserved for truck drivers and employees. There had been reports that vehicles parked in that area had been burglarized. Sgt. Brown drove close to Curtis and began to question him. He noticed that Curtis had something in his hand that he concealed under his shirt when Sgt. Brown approached him. Sgt. Brown asked Curtis what he had, and Curtis told him it was a camera. He asked Curtis to show it to him, and, when Curtis raised his shirt, Sgt. Brown saw that he did not have a camera,

but something that looked like a CD case. Sgt. Brown also saw the handle of a Glock handgun sticking out of his pants pocket.

When this took place, Sgt. Brown was sitting in his car, and Curtis was walking around behind the vehicle. After he saw the handle of the Glock, Sgt. Brown realized that he was at a disadvantage if he confronted Curtis, because his position was exposed, and he could not readily reach his weapon. He told Curtis that he was not interested in the camera and he could leave. Sgt. Brown took that opportunity to drive back into the Petro parking lot and retrieve his shotgun from his trunk. Then he drove back to where Curtis was walking and confronted him again. This time, Sgt. Brown ordered Curtis to lie down on the ground, and he handcuffed him.

At this point, the stories diverge. Curtis says that the initial injury on May 9 was relatively minor, and on his forearm. He contends that Sgt. Brown put the handcuffs on too tight, then lifted him off the ground by those handcuffs. Curtis says this act caused the initial injury to become a "complex laceration" and resulted in permanent neurological damage.

Sgt. Brown says that, after he handcuffed Curtis and removed the gun from his pocket, he asked Curtis to roll over and sit by the car. At that point, he noticed that Curtis had something that looked like masking tape wrapped around his wrist. There was what appeared to be dried blood on the tape. Knowing that the Hinds County Detention Center would not accept Curtis into custody if he appeared to be injured, Sgt. Brown called American Medical Response, or AMR, which is an ambulance service.

The parties do not dispute that AMR arrived at the scene and examined Curtis's arm. Brown says that they washed the cut off and re-bandaged it. AMR's records reflect that the injury was a "U-shaped lac above the right wrist lac about 2" long bleeding controlled . . . ." AMR's report

described Curtis as "very upset yelling fighting with EMS and SO pt not following commands very hostile pt refused all care." According to the record, "Risks explained up to and including death. Transportation clearly offered." The actual "Refusal of Service" form does not appear to contain Curtis's signature; however, in the space marked "Patient's Signature:" is a handwritten notation, "on paper."

When Curtis arrived at the Hinds County Detention Center on May 13, he initiated a Health Services Request Form stating that his injury was "Risk [sic] got cut from hand cuff." Medical records from the facility show that he came to the Medical Unit on May 16, "with an open wound on the anterior area of the ® wrist, 35 mm x 15mm. No active bleeding at this time." He was given Motrin for pain and placed on the doctor's list for the next day. On May 17, Curtis was taken to the Central Mississippi Medical Center for examination and treatment, and from there he was transported to the emergency room at the University Medical Center. The doctor's notes related to that visit state Curtis's history as follows: "The patient reports he cut his right wrist on a 'piece of glass' on 5-9-11. He was then arrested on 5-12-11 and reports that the 'handcuffs tore the cut open and made it worse.'" The doctor examined the cut and noted that it extended to the subcutaneous tissues. It was not actively bleeding, but the skin margins were jagged. The neurovascular examination was intact, and the remainder of the skin examination was unremarkable. There was no swelling or deformity to the hand, although Curtis was unable to flex his ring and little fingers or to make a fist. The medical staff talked to the Hinds County Detention Center nurse, who advised that they wanted Curtis to see a specific contracted doctor for treatment. His laceration was cleaned and dressed, and he was released. He was re-examined at UMC on June 16, where the radiologist noted no soft tissue swelling.

**ANALYSIS**

In his Amended Complaint, Curtis states that, after putting him in handcuffs, "Deputy Brown then unreasonably and recklessly pulled Mr. Curtis up from the ground by his handcuffs, immediately ripping Mr. Curtis' [sic] right wrist, causing a complex laceration and permanent neurological damage." According to Curtis, this action constituted excessive force, thereby violating his constitutional rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States. Curtis also alleges that Sgt. Brown violated his constitutional rights by failing to provide him with timely and proper medical care and violated state law by intentionally inflicting emotion distress on Curtis. He has also asserted claims against Hinds County (which has not moved for summary judgment), contending that it is also liable for failing to provide medical care and for promoting the use of excessive force by failing to address it in its written policies.

Sgt. Brown, who has been sued in both his individual and his official capacities, asserts that he is entitled to summary judgment in his individual capacity. In support of that contention, Brown argues that he is protected by the doctrine of qualified immunity. Brown argues that Curtis has not established that the use of handcuffs was excessive to restrain a suspect found to be carrying a concealed weapon. He further argues that Curtis's injuries were incidental to the use of handcuffs, which the Fifth Circuit has said do not amount to excessive force. With regard to the medical claims, Brown argues that he satisfied any duty he had to Curtis by summoning AMR to the scene of the arrest to examine Curtis, and he had no further involvement with or responsibility to Curtis after he was delivered to the Detention Center. Finally, with regard to the state law claims against him, Brown argues that he is immune from suit under the Mississippi Tort Claims Act.

Curtis, in response, argues that the wound was more severe than Brown admitted and in a different place than Brown identified, that he was not resisting arrest, that he did not refuse the services of AMR, and that some of the evidence offered by the Defendants should not be considered by the Court. He never identified, in his Response, the specific act that he believes violated his constitutional rights, and he never demonstrated how that act was objectively unreasonable. He concluded, "[T]he record shows that when AMR arrived to the scene Plaintiff was 'bleeding' with a potentially deadly 'U shaped laceration above his wrist about 2 inches long.' [Reference to AMR record omitted.] Clearly excessive force had been utilized against the Plaintiff by the arresting officer, Defendant Brown. Said force was objectively unreasonable." In support of that conclusion, Curtis cites to the portion of Sgt. Brown's deposition where he said that Curtis was not resisting arrest.

When a government official moves for summary judgment based on qualified immunity, the court must conduct a two-pronged analysis: first, whether a constitutional right has been violated; and, second, whether the defendant's conduct violated a constitutional right that a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Curtis's argument is, essentially, that because he suffered a serious injury to his wrist, Sgt. Brown must have used excessive force in restraining and arresting him. His claims are, essentially, a *res ipsa loquitur* argument that has no place in a case based on § 1983. The fact that an injury occurred while a plaintiff was in police custody does not establish a § 1983 claim; the plaintiff must specifically identify the act that caused his injury. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 594 (7th Cir. 1997); *Brownell v. Figel*, 950 F.2d 1285, 1292 (7th Cir. 1991); *Howe v. Town of North Andover*, 854 F. Supp. 2d 131, 145 (D. Mass. 2012); *Brown v.*

*City and Cnty. of San Francisco*, No. C 11-02162 LB, 2011 WL 5025138 at *5 (N.D. Cal. Oct. 20, 2011) ("[T]he deputies applied some unknown quantum of force to restrain Decedent . . . sadly, Decedent died as the deputies applied this force. But these allegations, which fail to connect the *type* or *amount* of force to the injury, . . . do not cross the line from possible to plausible as required by *Iqbal*."); *Ash v. Boone Cnty., Ky*, No. 09-190-DLB, 2011 WL 4431820 at *6 (E.D. Ky. Sept. 22, 2011); *Hunt v. Dart*, 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010) (rejecting argument that prisoner died in the custody of law enforcement by, according to his experts, blunt force trauma, so death must have been caused from assault by officer or inmate, as doctrine of *res ipsa loquitur* is confined to negligence cases); *Padula v. Leimbach*, 740 F. Supp. 2d 981, 993 (N.D. Ind. 2010) (restraining a combative arrestee in a prone position is not excessive force simply because it resulted in death).

Analyzing a claim of excessive force "requires careful attention to the facts and circumstances of the particular case . . . ." *Graham v. Connor*, 490 U.S. 386, 396 (1989). That analysis should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Clearly, a constitutional injury can occur from the manner in which an arrestee is handcuffed. *Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir. 1998) (plaintiff left in handcuffs for over four hours after the location was secured, despite complaints of pain and requests to use the bathroom). Here, Sgt. Brown was confronting an individual whom he knew had a concealed weapon, and who had just lied to him about having it. According to Brown's deposition testimony, Curtis was backing away from him during the initial encounter, and Brown felt that he was in "a dangerous situation" because Curtis was in a position to shoot him before he could get to his weapon. Brown was entitled to restrain Curtis in handcuffs until he determined that

any danger to him had been eliminated. *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (officers justified in keeping suspects in handcuffs for two to three hours while they searched a gang house for concealed weapons). Additionally, Brown testified that he checked the handcuffs after he put them on, to make sure that they were not too tight. Curtis has not refuted that statement, nor has he alleged that he complained about the handcuffs, which were removed before AMR arrived at the scene.

Lifting a suspect by the handcuffs can constitute excessive force; however, the situation must be such as to demonstrate that the officer's conduct was in other respects abusive. *Solovy v. Morabito*, 375 F. App'x 521, 526-27 (6th Cir. 2010) (suspect lifted by handcuffs after informing officers that he had a "bad locked shoulder"); *Trimble v. Parisek*, No. 11-12932, 2013 WL 5449571 at *2 (E.D. Mich. Sept. 30, 2013) (suspect's hand fractured when lifted by handcuffs, and, although suspect yelled that his hand had snapped, officer said he didn't care and threw him into the back of the patrol car); *Gotcher v. Helpenstell*, No. C04-2417Z, 2006 WL 1234881 at *3 (W.D. Wash. Apr. 27, 2006) (after being lifted by handcuffs, prisoner was repeatedly slammed against a wall, kneed in the kidneys, and dangled in the air); *Trepanier v. Davidson*, No. 03C6687, 2006 WL 1302404 at *9-10 (N.D. Ill. May 5, 2006) (officer tackled suspect in a creek, hit his head on a rock, hit him with a baton and kicked him, and used his baton to twist and compress his handcuffs while dragging him through a parking lot). As the Fifth Circuit has stated, however, "[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (bruising on wrist and arms from tight handcuffs); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (contusions of the wrist); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)

(swelling from tight handcuffs). Without any more explanation from Curtis of how, exactly, Brown committed an objectively unreasonable act that violated his constitutional rights, this Court is at a loss to declare that his claims can survive summary judgment. Considering his bare claim that he was lifted up by his handcuffs, without any showing of malice on the part of Sgt. Brown, this Court cannot declare that the act violated a clearly established constitutional right; therefore, Curtis has failed the first prong of the qualified immunity test.

The second prong of the immunity test requires the plaintiff to show that the officer's conduct was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 399-400 (5th Cir. 2004). To be objectively unreasonable, the officer's act must have contravened a right that is so well established that any reasonable official would understand that his conduct violated it. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). As the Supreme Court has explained, "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Fifth Circuit has further explained, "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011). An officer may have fair warning that his conduct violates a constitutional right from precedent decided on similar, but not identical, facts, but the facts used for comparison must be those that have been resolved in the plaintiff's favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Even without case precedent, a practice that evinces "obvious cruelty" or is "antithetical to human dignity" should provide officers

with adequate notice that their conduct is violative. *Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (inmate hitched to a post in a painful position for several hours).

Moving from conduct that is prohibited in a general sense to the specific conduct at issue, the Fifth Circuit pronounced in a recent case, "While the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force used in a given situation may not have been clear to a reasonable officer at the scene." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). Here, Curtis has not provided, and this court has not found, a case involving similar facts that would have given Sgt. Brown notice that his conduct was illegal. Curtis has not established, moreover, that the general state of the law was such that Sgt. Brown had fair warning that lifting Curtis up by his handcuffs violated his constitutional rights. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1011 (5th Cir. 2003) (while holding that prolonged detention was unlawful under Supreme Court precedent, that precedent "did [not] establish a clear rule warning defendants that such conduct was illegal."). Likewise, Curtis has shown no clear rule warning Sgt. Brown that merely lifting Curtis by his handcuffs was illegal. The Court finds, therefore, that Curtis has failed to satisfy the second prong of the test for qualified immunity, and Sgt. Brown is entitled to summary judgment on the excessive force claims.

Curtis's claims against Brown relative to his medical treatment lack foundation. Deliberate indifference to a prisoner's serious medical needs constitutes an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07(1976); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). To succeed on such a claim, however, Curtis would have to show that Sgt. Brown "acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 238 (5th Cir.

2009). Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Additionally, as the Fifth Circuit has stated, "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The Fifth Circuit Court of Appeals has clearly stated that negligent medical care does not constitute a valid section 1983 claim. *Kitchen v. Dallas Cnty., Texas*, 759 F.3d 468, 482 (5th Cir. 2014); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

As discussed earlier, Sgt. Brown summoned AMR to the scene to treat Curtis for the cut on his wrist. There is a disputed issue of fact as to whether Curtis refused to allow AMR to transport him to the hospital or whether Brown refused to release him for transport. In any event, Curtis faults AMR because its personnel did not transport him to the hospital; however, AMR has never been served with process in this lawsuit. In contrast, Sgt. Brown is not a medical professional, and there is no indication that he was informed by AMR that there was a substantial risk of serious harm if Curtis was not taken to the hospital. Brown could not have deliberately ignored Curtis's medical needs if he was not *subjectively* aware of them. Moreover, Curtis has not shown that serious harm resulted because he was taken to the Detention Center rather than to the hospital that night. Finally, Sgt. Brown contends that he had no duty to provide medical care to Curtis after he was transported to the Detention Center, and Curtis has not refuted that contention. The Court finds, therefore, that Curtis has failed to present any significant evidence showing that Sgt. Brown was deliberately indifferent to a substantial health risk. For this reason, Sgt. Brown is entitled to summary judgment on Curtis's medical claims against him.

Curtis has made a state law claim for intentional infliction of emotional distress against Sgt. Brown. The Mississippi Tort Claims Act immunizes governmental entities and their employees for any act or omission of an employee engaged in activities relating to police or fire protection "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (Supp. 2011); *Giles v. Brown*, 962 So. 2d 612, 615-16 (Miss. Ct. App. 2006). The Mississippi Supreme Court has described "reckless disregard" as a higher standard than gross negligence, but less than intent. *City of Jackson v. Law*, 65 So. 3d 821, 826 (Miss. 2011). The term "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 995 (Miss. 2003). Similar to an excessive force claim under § 1983, the determination of whether there was reckless disregard will depend upon the circumstances surrounding the incident that caused the injury. *Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. Ct. App. 2008).

In Mississippi, a claim of intentional infliction of emotional distress focuses on the defendant's conduct, rather than the plaintiff's emotional condition. *Perkins v. Wal-Mart Stores, Inc.*, 46 So. 3d 839, 847 (Miss. Ct. App. 2010). The conduct must be extreme; thus, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001). Here, Sgt. Brown's conduct in lifting Curtis has been found by the Court to be not objectively unreasonable, and he did not act with deliberate indifference to Curtis's medical needs. Sgt. Brown did not, therefore, act in reckless disregard for Curtis's safety, and Brown's behavior could not have been so extreme as to have intentionally inflicted emotional distress. Brown is immunized under the Mississippi Torts Claim Act from

liability, and, in any event, his conduct did not rise to the level necessary to find intentional infliction of emotional distress under Mississippi law. For these reasons, Curtis cannot recover on his state law claims.

**CONCLUSION**

Having reviewed the pleadings and the evidence submitted by the parties, and resolving all facts in favor of the Plaintiff, the Court concludes that Curtis has not shown that Sgt. Brown used excessive force in lifting him by the handcuffs. Additionally, the Court finds that clearly established law would not have put Sgt. Brown on notice that his conduct violated Curtis's constitutional rights. The Court also concludes that Curtis has not demonstrated that Sgt. Brown was deliberately indifferent to any serious risk of harm to Curtis. Finally, the Court finds that Sgt. Brown is immunized, under the Mississippi Tort Claims Act, for liability to Curtis on the state law claim of intentional infliction of emotional distress, and Brown's conduct would not have support such a charge if he had not been immune.

IT IS, THEREFORE, ORDERED:

1. That Defendant Sgt. Brown's Motion for Summary Judgment Premised on Immunity [61] is **granted,** and the claims brought against Sgt. Brown in his individual capacity be dismissed with prejudice.

2. That Plaintiff's Motion to Strike [60] is **denied.**

3. Any further motions should be filed on or before **October 24, 2014.**

IT IS SO ORDERED, this the 24th day of September, 2014.

S// Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE