**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JAMES EDWIN CURTIS**                                                                            **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO.: 3:12CV260LRA**

**HINDS COUNTY, MISSISSIPPI,
and RICHARD BROWN, in his
individual and official capacities**                                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR RECONSIDERATION**

The Plaintiff in this case, James Edwin Curtis, has filed a Motion for Reconsideration [Doc. #77], asking this Court to review its earlier decision granting summary judgment to Defendant Richard Brown, a Hinds County Deputy Sheriff, in his individual capacity. Curtis raises three issues that he believes support his request, arguing: (1) the Court erred when it found that Sgt. Brown's use of force was objectively reasonable; (2) the Court erred when it held that a *res ipsa loquitur* argument had no place in a case based on 42 U.S.C. § 1983; and (3) the Court failed to adhere to the standard for summary judgment when it granted qualified immunity to Sgt. Brown. In conjunction with this Motion, Curtis also filed a Motion for Leave of Court to File Second Amended Complaint to Conform to Evidence [Doc. #83] and a Motion for Leave of Court to Supplement Designation of Experts and Designate Additional Experts. [Doc. #84] The Court carefully considered Curtis's allegations and the applicable law when it ruled on the Motion for Summary Judgment, and for the reasons more fully expressed below, is of the opinion that the Motion for Reconsideration lacks merit and should be denied. Similarly, the Court finds that the Motion for Leave to File Second Amended Complaint and the Motion for Leave to Supplement Designation of Experts lack merit and should also be denied.

This lawsuit is based on Sgt. Brown's arrest of Curtis on May 13, 2011. On that night, Curtis had a pre-existing injury to his right forearm. After the arrest, Sgt. Brown noticed blood on Curtis's forearm, and he called American Medical Response ("AMR"), an ambulance service, to treat Curtis's injury. Curtis was then taken to the Hinds County Detention Center, from which he was transported days later to the emergency room at the University Medical Center, where the laceration was cleaned and dressed. Curtis was released from the Detention Center before undergoing further treatment. Some time later, and after another alleged injury to his wrist by a different officer in an unrelated incident, Curtis had surgery on his wrist.

Curtis's Motion for Reconsideration is based on Fed. R. Civ. P. 59(e). A movant seeking relief under this Rule "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and [the Rule] cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azuris Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (internal quotations omitted). Reconsideration of a judgment "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Although this Court has discretion to reopen the issues disposed of in its earlier Memorandum Opinion and Order, that discretion is not limitless. *Id*. "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet*, 367 F. 3d at 379 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)). Even if new evidence is properly presented and considered, a Rule 59(e) motion should be granted only where it "(1) probably changes the outcome of the case; (2) could not have been discovered earlier by proper diligence; and (3) is not merely

cumulative or impeaching." *Molina v. Equistar Chemicals LP*, 261 F. App'x 729, 733 (5th Cir. 2008).

Curtis argues that his deposition, which was **not** presented to the Court in opposition to the Motion for Summary Judgment, constitutes new evidence that should be considered by the Court to establish the requisite malice on the part of Sgt. Brown. This case was filed in April, 2012, and his attorneys appeared on his behalf in February and March, 2013. Brown's Motion for Summary Judgment was filed on February 4, 2014, nearly a year after Curtis's attorneys entered their appearances. It is true that the Defendants did not depose Curtis until August, 2014, a little over a month before the entry of the Memorandum Opinion and Order granting the Motion for Summary Judgment. Curtis has not explained, however, why he could not obtain and submit his own sworn affidavit or proper declaration in response to the summary judgment motion. Curtis claims that the Court's ruling was premature because he was not deposed until shortly before the Court issued its ruling. The time for general discovery had long since passed, however, and only discovery related to the immunity defense was ongoing. Curtis filed his response to the motion for summary judgment and made no request for supplemental discovery in accordance with Fed. R. Civ. P. 56(d). The Court was never asked to defer its ruling pending Curtis's deposition. For these reasons, the Court is not inclined to reconsider its earlier ruling to include these new claims.

The only allegations before the Court in considering the Motion for Summary Judgment were those contained in Curtis's Amended Complaint. Contrary to his assertions, nowhere in the Amended Complaint does Curtis allege that Sgt. Brown "shoved him in the chest to the ground," thus causing the injury to Curtis's wrist. Instead, Curtis stated that Sgt. Brown put him in handcuffs, "then unreasonably and recklessly pulled Mr. Curtis up from the ground by his handcuffs,

immediately ripping Mr. Curtis' right wrist, causing a complex laceration and permanent neurological damage." Am. Compl. ¶ 16.

Curtis's first attack on the Court's Opinion granting Sgt. Brown's Motion for Summary Judgment is that it disregarded case law holding that lifting a prisoner by his handcuffs constitutes excessive force. He goes on to say, "In fact, this Court stated in its own opinion that conduct such as Defendant Brown's amounts to malicious and excessive force." Following this sentence, he lists a string of citations that do, indeed, appear in the Court's Memorandum Opinion and Order. He has, however, completely mischaracterized the Court's position. In fact, the paragraph in which the citations appear begins, "Lifting a suspect by the handcuffs *can* constitute excessive force; *however, the situation must be such as to demonstrate that the officer's conduct **was in other respects abusive***." Mem. Op. 7 (emphasis added). The facts in this case do not support such a finding, and the facts in *Williams v. Champagne*, 13 F. Supp. 3d 624 (E.D. La. 2014), cited by Curtis, are not the "exact same conduct" exhibited by Sgt. Brown in this case. In *Williams*, the inmate had been fully restrained in a "suicide chair" at the time of the incident. *Id*. at 633. As evidenced by the court's review of a surveillance video of the events, officers had handcuffed Williams too tight, and he appeared to be in pain. The officer pulled the chain between the handcuffs, obviously, for no other reason than to cause further discomfort.

There is no evidence supporting a claim that Sgt. Brown intended that Curtis aggravate his existing wrist injury. Even accepting Curtis's account of the incident, it appears that Sgt. Brown was only trying to lift Curtis to an upright position when the injury occurred. The accidental nature of this injury can be considered in determining whether Sgt. Brown used excessive force in arresting Curtis. *James v. Mason*, 513 F. App'x. 364, 366 (5th Cir. 2013). In order to establish an excessive

4

force claim, Curtis would have to show that the force was used "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The evidence before the Court did not establish the sort of abusive situation that would support a finding of excessive force; therefore, contrary to Curtis's belief, the Court's finding is not erroneous, nor should it be vacated.

Curtis also seeks reconsideration on grounds that the Court misstated the law on the doctrine of *res ipsa loquitur*. In the original opinion in this case, the Court stated, with reference to Curtis's failure to explain how the injury actually occurred, "Curtis's argument is, essentially, that because he suffered a serious injury to his wrist, Sgt. Brown must have used excessive force in restraining and arresting him. His claims are, essentially, a *res ipsa loquitur* argument that has no place in a case based on § 1983." Mem. Op. 5. In contesting this statement, Curtis argues, "The Fifth Circuit adopted the standard set forth by *Monroe v. Pape* when it held that the doctrine of *res ipsa loquitur* should be read against the background of § 1983 in a claim of excessive force against a police officer. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005)." P's Br. 14. Curtis is mistaken.

The doctrine of *res ipsa loquitur* is not an element of a tort claim; it is, essentially, a rule of evidence that permits a jury to infer negligence and causation from circumstantial evidence. Neither *Monroe v. Pape*, 365 U.S. 167 (1961), nor *Murray v. Earle* was a negligence case, and neither case mentions the doctrine of *res ipsa loquitur*. In fact, *Murray v. Earle* was not an excessive force case; it involved an unsuccessful claim that the Fifth Amendment was violated during the custodial interrogation of a minor. What each case *did* hold was that the doctrine of tort liability "that makes a man responsible for the natural consequences of his actions" could be applied to a § 1983 case. *Murray*, 405 F.3d at 292 (quoting *Monroe*, 365 U.S. at 187). These cases do not support Curtis's claims.

5

Finally, the Court finds no merit to Curtis's argument that the summary judgment standard was improperly applied in his case. As the Memorandum Opinion concluded, "Having reviewed the pleadings and the evidence submitted by the parties, *and resolving all facts in favor of the Plaintiff*, the Court concludes that Curtis has not shown that Sgt. Brown used excessive force in lifting him by the handcuffs." Mem. Op. 12 (emphasis added). Curtis has submitted nothing that changes the Court's opinion. The Court applied the law to the facts alleged in the Amended Complaint, assuming that they were accurate and complete. In so doing, the Court completely disregarded Sgt. Brown's testimony that he only asked Curtis to roll over and sit by the police car.

Curtis also takes issue with the Court's finding, in his words, "passively and erroneously," that the failure to transport him to the hospital from the truck stop did not constitute deliberate indifference to a serious medical need. P's Br. 19. As the Court recognized, the record was not clear as to whether Curtis refused treatment or Sgt. Brown refused to release him; this factual dispute, however, is not material. The law *only* supports a finding of an Eighth Amendment violation for delayed medical care when there has been "deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The standard for deliberate indifference goes well beyond negligence and "encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). It is "an 'extremely high' standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). To be deliberately indifferent, the officer's action or inaction must pose an excessive risk to the inmate's health, and the officer must be aware that a substantial risk of serious harm exists. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *McClure v. Foster*, 465 F. App'x 373, 375 (5th Cir. 2012).

Where the prisoner's claim rests on a delay in treatment, therefore, that delay must result in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Here, the record conclusively establishes that Sgt. Brown called AMR to treat Curtis when Brown noticed the blood on the tape on his wrist. Curtis was then transported to the Hinds County Detention Center, where Sgt. Brown relinquished custody of him. Based on these facts, the Court cannot say that Curtis has shown that Sgt. Brown was deliberately indifferent to his serious medical needs. Moreover, Curtis has not shown that the delay between AMR's arrival at the scene and Brown's delivering Curtis to the Detention Center caused substantial harm. For all of these reasons, the Court finds that the Motion for Reconsideration lacks merit and should be denied.

In analyzing Curtis's other motions – to amend his complaint and to designate additional expert witnesses – it is important to set out the procedural history of this case. It was originally filed in April, 2012, *pro se*. As is customary in *pro se* cases brought by a prisoner, a hearing was held on October 11, 2012, during which the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. In February and March, 2013, however, counsel entered appearances on behalf of Curtis. From that time, the case has proceeded in the ordinary course of civil litigation.

In accordance with that process, a Telephonic Case Management Conference was held on May 15, 2013, before the undersigned, and a Case Management Order was entered on May 28, 2013. That Order set a deadline for amending pleadings of June 17, 2013, and a discovery deadline of January 14, 2014. Additionally, October 14, 2013, was set as the deadline by which Curtis had to designate experts. Curtis filed a motion to amend his complaint just slightly past the deadline; that motion was granted, and he filed an Amended Complaint on September 4, 2013. On October 14,

2013, the date set by the Case Management Order, counsel for Curtis submitted a Notice of Service of Expert Designation.

Subsequently, Sgt. Brown moved for summary judgment, and, in conjunction with that motion, took Curtis's deposition, in August, 2014. In that deposition, Curtis's account of the events of his arrest differed in some points from the Amended Complaint; however, none of that testimony was brought to the attention of the Court. After the Court granted summary judgment to Sgt. Brown, Curtis moved for leave to file a Second Amended Complaint; however, he failed to file the proposed Complaint. It was finally supplied as an exhibit to his Reply in support of the Motion on November 13, 2014, over eighteen months after the original deadline for amending pleadings. The proposed Amended Complaint modifies his allegations as follows, the additions italicized:

15. While Mr. Curtis was laying on the concrete, Deputy Brown placed him in handcuffs *by placing his foot on top of Plaintiff between Plaintiff's neck and back and handcuffing Plaintiff* [sic] *hands behind his back.*

16. *Plaintiff informed Deputy Brown that the handcuffs were too tight to which Deputy Brown responded, "Shut up!"*

17. Deputy Brown then unreasonably and recklessly pulled Mr. Curtis up from the ground *into the air* by his handcuffs, immediately ripping Mr. Curtis' right wrist, causing a complex laceration and permanent neurological damage.

18. *Plaintiff informed Deputy Brown that he was hurting him to which Deputy Brown responded again, "Shut up!"*

19. *Once Plaintiff was on his feet, Deputy Brown pushed Plaintiff in the chest with a strong force knocking Plaintiff back onto the ground on his back on top of the handcuffs.*

20. *At this time, Plaintiff could feel blood running off his hands and informed Deputy Brown that he had been hurt.*

21. *Deputy Brown then snatched Plaintiff up by his shirt and responded to Plaintiff to "Shut up! Shut up!"*

The decision of whether to allow Curtis to amend his Complaint is governed by the Fifth Circuit decision in *S&W Enters. v. Southtrust Bank*, 315 F.3d 533 (5th Cir. 2003). In that case, the court held that, once a scheduling order has been entered by the court, the decision to allow an amended complaint is controlled by Fed. R. Civ. P. 16(b), rather than the often quoted Rule 15 ("The court should freely give leave when justice so requires."). Rule 16(b)(4) states that the schedule set by the court "may be modified only for good cause and with the judge's consent." In determining whether good cause is shown, *S&W Enters.* sets forth a four-part test, requiring the court to consider "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536, quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997). Where the first and third factors weigh heavily against the party seeking amendment, denial of a motion to amend is appropriate. *Fahim v. Marriott Hotel Svcs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Where the proposed amendment would be futile, denial is also appropriate. *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013).

With regard to the first element – the movant's explanation for the delay – the Court finds that Curtis's rationale that he did not know about the events of his arrest until he gave his deposition unpersuasive. The first element, therefore, weighs against him. The second factor – the importance of the amendment – weighs against the movant if the proposed amendment would be futile. In the Court's opinion, the amendment still fails to show a constitutional violation that would overcome Sgt. Brown's immunity defense. Thus, the second element also weighs against Curtis.

The potential prejudice to the Defendants and the availability of a continuance are interrelated. This case is almost three years old. Permitting Curtis to amend his complaint at this

9

point would further delay resolution of this case. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Unnecessary litigation of constitutional issues . . . wastes the parties' resources. Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("One of the purposes of immunity . . . is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."). For all of these reasons, therefore, the Court is of the opinion that Curtis's untimely motion to amend his Complaint should be denied.

Curtis has also filed a Motion for Leave of Court to Supplement Designation of Experts and Designate Additional Experts, by which he seeks to name his attending physician and surgeon as expert witnesses, as well as a vocational expert and an "excessive force expert." At a telephonic Case Management Conference in May, 2013, in which Curtis's counsel participated, the Court set a deadline for designating experts of October 14, 2013, for Curtis and November 14, 2013, for the Defendants. The Defendants sought two short extensions, which were granted; however, Curtis did not ask for additional time. He filed the Motion currently under consideration over a year after the original deadline for designating experts had expired.

As grounds for the extension, Curtis's counsel argue that Curtis could not remember who performed the surgery on his wrist, requiring his attorneys to use the "trial and error" method of tracking down his treating physician. During his deposition, Curtis confirmed that he did not know who performed the surgery; however, he was able to testify that it was done in a hospital in Hattiesburg, as he was incarcerated in Greene County when it was performed. Curtis explained,

"It's a – Hattiesburg hospital but I went to Southern Bone Specialists in Hattiesburg, but the surgery was performed at the hospital."

Apparently, Curtis's lawyers did not begin to search for the treating physician until December, 2013, seven months after the Case Management Conference and two months after the expiration of the deadline for Curtis to designate expert witnesses. At that point, they mailed a medical records request to Dr. Aubrey Lucas, a hand surgeon in Flowood, Mississippi. Dr. Lucas's office contacted the attorneys in February, 2014, to inform them that Dr. Lucas did not perform the surgery. It was not until August, 2014, that counsel wrote to the Southern Neurologic & Spinal Institute in Hattiesburg and to Forrest General Hospital to request Curtis's medical records. Although Southern Neurologic & Spinal Institute notified counsel that no one on its staff had performed surgery on Curtis, counsel did apparently obtain medical records from Forrest General Hospital in September, 2014. According to Curtis's counsel, those records list his attending physician, his surgeon, and his interpreting physician, and he wants to supplement his medical records to include that information. Curtis additionally asks for leave to designate an expert on excessive force, "in light of the testimony set forth in his deposition taken by the Defendants on August 12, 2014, over five (5) months after the Defendants filed their motion for summary judgment." He also seeks to designate a vocational expert.

Curtis continues to claim that he should be excused from compliance with the deadlines set in the Case Management Conference, in which his attorneys participated, because the Defendants took his deposition late in this litigation – a claim that is not persuasive. The timing of his deposition should have had absolutely no effect on his communication with his own lawyers and does nothing to excuse his non-compliance with the Case Management Plan Order. Curtis could

have informed his counsel at the beginning of their representation that his surgery occurred in Hattiesburg; nonetheless, they waited until *two months after* the expiration of the deadline to designate experts to begin looking for his doctor in Flowood. After learning that the doctor in Flowood was not the right one, they waited another six months before looking in Hattiesburg. While Curtis's deposition revelation about his surgery might have excused the *Defendants* from locating his surgeon earlier, it does not excuse Curtis.

Curtis justifies his late request by arguing that other litigants in other cases have been permitted to designate expert witnesses after the deadline for doing so has expired. This argument is almost never persuasive, as decisions are made based on the facts of each case. In *Francois v. Colonial Freight Systems, Inc.*, No. 3:06cv434WHB-LRA (S.D. Miss. Jan. 24, 2007), as noted by Curtis, the undersigned did permit a late designation of experts. In that case, however, the Plaintiffs' deadline for designating experts expired on December 1, 2006. A little over a month later, the Plaintiffs moved to designate an additional witness, arguing that the witness was necessary based on discovery responses that the Plaintiffs did not receive from the Defendant until after the deadline had passed. The discovery period had not expired at that time, and the Court permitted the additional designation. That situation differs markedly from the circumstances of this case, where the Plaintiff's Motion comes over a year after the deadline for designating experts had expired and many months after the close of discovery.

In *Magruder v. AMICA Mutual Ins. Co.*, 1:07cv564LTS-RHW (S.D. Miss. Feb. 4, 2009), also offered by Curtis in support of his Motion, District Judge Senter granted a motion seeking leave to designate the Plaintiffs as experts concerning the value of their property. In granting the motion, Judge Senter noted that, under the common law, a property owner is generally permitted to testify

as to the value of land, so long as there is a basis for his opinion. He further referred to the Advisory Committee Notes to Fed. R. Evid. 702, which distinguishes between "experts in the strictest sense of the word," such as physicians, and "the large group sometimes called 'skilled' witnesses, such as bankers or *landowners testifying to land values*." Moreover, it was no surprise that the Plaintiffs were going to testify in the case; the subject of the motion was one particular aspect of their testimony, on which the Plaintiffs could likely have testified without being designated as experts. The facts of *Magruder* are vastly different from this case, where only some of the experts at issue have been identified, and Curtis has not supplied the requisite information about their testimony for any of them.

The analysis of whether to allow these late designations, like the analysis of whether to allow the late amendment, is governed by the four-part test announced in *S & W Enters.,* 315 F.3d at 536: (1) explanation for the delay; (2) importance of the expert; (3) potential prejudice to the Defendants; and (4) the availability of a continuance. Curtis does not have an acceptable reason for his tardiness, so the first factor favors the Defendants. As for the second factor – importance of the witness – the Court is also of the opinion that it does not favor Curtis. The use of expert testimony on the issue of excessive force is not always necessary. *United States v. DiSantis*, 565 F.3d 354, 364 (7th Cir. 2009)("Since the question of excessive force is so fact-intensive, the jury will often be 'in as good a position as the experts' to decide whether the officer's conduct was 'objectively reasonable.'") (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2009)); *see also Hygh v. Jacobs*, 961 F.2d 359, 364 (2nd Cir. 1992) (testimony of excessive force expert that officer's conduct was unreasonable was improper as an opinion on an ultimate fact). Even where such testimony might be allowed, an expert designation that fails to detail the opinions of the expert on that issue and the

13

facts supporting that opinion will not be permitted. *Hayward v. Landry*, Civil Action Nos. 02-927-JJB, 03-154-JJB, 2006 WL 5249691 at *2 (M.D. La. Oct. 30, 2006).

Here, there is no dispute that Curtis had cut his wrist prior to his arrest on May 13, 2011, and that Sgt. Brown saw blood – either fresh or dried – on the tape around his wrist after the arrest. There is no dispute that Curtis was ultimately sent by Hinds County jailers to an emergency room for treatment for that cut. The Defendants have not disputed that Curtis had surgery on his wrist in late 2012. At this point, the issue is not so much the quantum of Curtis's injury but the mechanism by which he acquired it, which, in the Court's opinion, has not been shown to be through the use of excessive force.

As discussed earlier with regard to the motion to amend, the third and fourth issues – prejudice to the Defendants and the availability of a continuance – the Court must consider Sgt. Brown's immunity defense. Permitting additional experts to be added at this stage of the litigation could result in a reopening of discovery. If Sgt. Brown is entitled to immunity from suit, he is entitled to immunity from the discovery process, particularly where the discovery is unwarranted. Having considered the law, the pleadings, and the arguments of counsel, the Court is of the opinion, and so holds, that the Motion for Leave of Court to Supplement Designation of Experts, like the Motion for Leave of Court to File Second Amended Complaint and the Motion for Reconsideration, should be denied.

## **CONCLUSION**

Curtis's Motion for Reconsideration re-argues his earlier position and makes new arguments that should have been raised in his response to Sgt. Brown's Motion for Summary Judgment. Based on the record that was before the Court in ruling on that Motion, the Court is not persuaded that the

original decision should be disturbed. Curtis's requests to file another amended complaint and add new experts are untimely and without merit. For these reasons, the motions will be denied.

IT IS, THEREFORE, ORDERED that the Motion for Reconsideration [Doc. #77], the Motion for Leave of Court to File Second Amended Complaint to Conform to Evidence [Doc. #83], and the Motion for Leave of Court to Supplement Designation of Experts and Designate Additional Experts [Doc. #84] are **denied**. Final Judgment shall be entered in favor of Defendants.

IT IS SO ORDERED, this the 29th day of September, 2015.

 S// Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE